UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
**25-CR-20436-WILLIAMS/LETT**
CASE NO. _____

18 U.S.C. § 1962(d)
18 U.S.C. § 1963(a)
18 U.S.C. § 1956(h)
18 U.S.C. § 982(a)(1)
18 U.S.C. § 371
18 U.S.C. § 2

UNITED STATES OF AMERICA

vs.

EDWIN ALBERTO CORREA-DAVID,
DANNA PAMELA PORRAS-MARIN,
ANDRES GIRALDO-OSPINA,
    a/k/a "FLACO,"
    a/k/a "EL FLACO,"
    a/k/a "AGIO,"
    a/k/a "A-GIO,"
JULIAN GIRALDO-OSPINA,
    a/k/a "JULIO,"
VIVIANA URREGO-ROJAS,
    a/k/a "VIVI," and
ESTEBAN ROBLEDO-CORREA,

      Defendants.
_____/

FILED BY ___ BM ___ D.C.

**Oct 1, 2025**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## INDICTMENT

The Grand Jury charges that:

### COUNT 1
### RICO Conspiracy
### (18 U.S.C. § 1962(d))

#### The Enterprise

1.    From at least in or around December 2021, and continuing through the date of this Indictment, within the Southern District of Florida, and elsewhere, the defendants,

**EDWIN ALBERTO CORREA-DAVID,**

1

SCANNED



**ANDRES GIRALDO-OSPINA,**
**a/k/a "FLACO," a/k/a "EL FLACO," a/k/a "AGIO," a/k/a "A-GIO,"**
**JULIAN GIRALDO-OSPINA,  a/k/a "JULIO,"**
**DANNA PAMELA PORRAS-MARIN,**
**VIVIANA URREGO-ROJAS, a/k/a "VIVI," and**
**ESTEBAN ROBLEDO-CORREA,**

together with others known and unknown to the Grand Jury, were members of, employed by, and associated with a criminal organization. The organization, herein referred to as the Visa-Fraud Enterprise, engaged in, among other things, acts of wire fraud, money laundering, visa fraud, identification fraud, and fraud in foreign labor contracting. The Visa-Fraud Enterprise operated in the Southern District of Florida and elsewhere in the United States and in Central and South America and the Caribbean.

2.      The Visa-Fraud Enterprise, including its leaders, members, and associates, constituted an enterprise as defined by Title 18, United States Code, Section 1961(4), that is, a group of individuals associated-in-fact.   The Visa-Fraud Enterprise constituted an ongoing organization whose members and associates functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise. The Visa-Fraud Enterprise was engaged in, and its activities affected, interstate and foreign commerce.

### The Racketeering Conspiracy

3.      From at least in or around December 2021, and continuing through the date of this Indictment, within the Southern District of Florida, and elsewhere, the defendants, and others known and unknown, each being a person employed by and associated with the Visa-Fraud Enterprise, an enterprise described above, that engaged in, and the activities of which affected, interstate and foreign commerce, did knowingly, willfully, and unlawfully combine, conspire, confederate, and agree with one another to violate Title 18, United States Code, Section 1962(c),

2

that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and (5), as set forth below in paragraph 4.

## The Pattern of Racketeering Activity

4.    The pattern of racketeering activity, through which the defendants and their co-conspirators agreed to conduct and participate in the conduct of the affairs of the Visa-Fraud Enterprise, consisted of multiple acts indictable under the following provisions of federal law:

A.    Title 18, United States Code, Section 1028 (relating to fraud and related activity in connection with identification documents);

B.    Title 18, United States Code, Section 1343 (relating to wire fraud);

C.    Title 18, United States Code, Section 1351 (relating to fraud in foreign labor contracting);

D.    Title 18, United States Code, Section 1546 (relating to fraud and misuse of visas, permits, and other documents); and

E.    Title 18, United States Code, Section 1956 (relating to the laundering of monetary instruments).

5.    It was a part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

## Purposes of the Enterprise

6.    The purposes of the Visa-Fraud Enterprise included, but were not limited to the following:

A.    To enrich the members and associates of the Visa-Fraud Enterprise financially by deceiving individuals living in Central and South American countries who wanted to obtain United

3

States government nonimmigrant visas and employment authorization in order to travel to the United States to work for a period of time.

B.     To direct victims, through false advertising, to member-operated websites to generate illicit proceeds, and to thereby promote the Visa-Fraud Enterprise;

C.     To conceal the nature, source, location, ownership, and control of the ill-gotten funds by laundering money through multiple transfers into, within, and out of the United States;

D.     To protect the enterprise and its members and associates from detection, apprehension and prosecution by law enforcement, including by concealing the source, location, ownership, control and disposition of ill-gotten funds through transfers of funds into, within, and out of the United States; and

E.     To preserve and protect the operations and profits of the enterprise through fines, expulsion, and other acts of discipline against non-conforming members and associates.

### Roles of the Defendants

7.     At various times relevant to this Indictment, the following defendants, among others, were members and associates of the Visa-Fraud Enterprise in the various capacities or ranks set forth below, and carried out and attempted and agreed to carry out various activities in furtherance of the enterprise described in this Indictment:

a.     **EDWIN ALBERTO CORREA-DAVID** was a leader of the Visa-Fraud Enterprise. He was active in the Enterprise from at least on or about December 2021 through the date of this Indictment. He oversaw the enterprise and was responsible for supervising the heads of a group of approximately eight offices, chiefly located in Medellin, Colombia.

b.     **ANDRES GIRALDO-OSPINA, a/k/a "FLACO," a/k/a "EL FLACO," a/k/a "AGIO," a/k/a "A-GIO,"** was a leader of the Visa-Fraud Enterprise. He was active in the enterprise from at least on or about December 2021 to the date of this Indictment. In 2024, he assumed oversight of an office, "Oficina Agio" that formerly fell within **EDWIN ALBERTO CORREA-DAVID**'s oversight. **ANDRES GIRALDO-OSPINA** shared

4

oversight of Oficina Agio with **JULIAN GIRALDO-OSPINA**.  In 2024, **ANDRES GIRALDO-OSPINA** arranged for the creation of additional offices.  He shared oversight of the additional offices with UCC-#1.

      c.    **JULIAN GIRALDO-OSPINA, a/k/a "JULIO,"** was a member and associate of the  enterprise since at least on or about August 2022 to the date of this Indictment.  He was based in California and was a group leader responsible for recruiting and managing intermediaries ("proveedores") to launder the proceeds of the fraud.  The proveedores he coordinated were chiefly based in California.  He also shared oversight and expenses for Oficina Agio with **ANDRES GIRALDO-OSPINA**.

      d.    **DANNA PAMELA PORRAS-MARIN** was a member and associate of the Visa-Fraud Enterprise since at least on or about  December 2021 to the date of this Indictment.   She was the primary administrator who assisted **EDWIN ALBERTO CORREA-DAVID** with management of offices overseen by **EDWIN ALBERTO CORREA-DAVID**.  She was also in charge of her own office, with the title, "secretaria," within the group of offices overseen by **EDWIN ALBERTO CORREA-DAVID**.

      e.    **VIVIANA URREGO-ROJAS, a/k/a "VIVI,"** was a member and associate of the Visa-Fraud Enterprise since at least on or about December 2021 to the date of this Indictment.  She was based in the United States, in Texas, and was a group leader in charge of recruiting and managing proveedores.  Proveedores she coordinated were based in Texas and several other states.  She also received victim payments herself and re-transmitted them to Visa-Fraud Enterprise members and associates in Colombia.

      f.    **ESTEBAN ROBLEDO-CORREA** was a member and associate of the Visa-Fraud Enterprise from at least on or about July 2022 to the date of this Indictment.  Until July 2024, he was based in the United States, in Massachusetts, and was a group leader in charge of recruiting and managing proveedores.  Proveedores he coordinated were mostly based in Massachusetts.  He also received victim payments himself and re-transmitted them to other Visa-Fraud Enterprise members and associates.  After on or about July 2024, he took on a role assisting **EDWIN ALBERTO CORREA-DAVID** and **DANNA PAMELA PORRAS-MARIN** with administrative matters for the enterprise in Colombia.

### Means  and Methods of the Enterprise

    8.    Among the means  and methods by which members and associates of the Visa-Fraud Enterprise  conducted and participated in the conduct of the affairs of the enterprise included, but were not limited to, the following:

A.      Members and associates of the enterprise used Facebook pages and other websites of their own creation to advertise that they could assist people in obtaining visas to work in the United States. These websites were designed to attract victims from Central and South American countries, including El Salvador, Ecuador, Honduras, Guatemala, and many others.

B.      Members and associates of the enterprise created and operated other fraudulent websites that falsely (i) claimed to be companies and potential employers that would employ victims once they arrived in the United States; (ii) offered travel and other services to victims seeking to enter the United States; and (iii) offered banking, insurance, and other services to victims once they arrived in the United States.

C.      Members and associates of the enterprise created new websites after older websites were discovered to be fraudulent and were taken down.

D.      Members and associates of the enterprise used various means to communicate, identify victims, and complete transactions, in order to protect the enterprise and to evade detection and prosecution by law enforcement. These methods included, but were not limited to, the use of assumed identities and aliases for call center workers ("asesores") who worked with victims; the use of WhatsApp messages, calls, and video calls; the use of telephone calls from outside the United States using voice-over-internet phones with United States telephone numbers; and the use of text messaging, including iMessages, Facebook Messenger; and e-mail.

E.      Members and associates of the enterprise used coded or vague language to avoid detection of their illegal activities. For example, a wire transfer was often described using the word "codigo" (the Spanish word for code) or plural "codigos" or by the term "giro" (the Spanish word for transaction or turn, generally understood to be used to mean a wire transfer) or plural

6

"giros." Victims were variously referred to as applicants, clients, patients, and "giles," the last of these being a Colombian Spanish slang term for fools or idiots.

F.      Members and associates of the enterprise used various means to deceive victims that they were participating in a legitimate visa application process.  These means often included using unauthorized replicas of United States government seals and letterhead when communicating with victims; conducting interviews in rooms designed to appear as United States government offices, with American flags displayed on flagpoles and United States government seals appearing to be affixed to the walls; following seemingly bureaucratic and formal procedures such as asking victims to review documents during video calls to verify the accuracy of the information therein or having victims sign retainer agreements for advisory services; and having victims complete lengthy and detailed questionnaires and supply copies of victims' personal documents.

G.      Members and associates of the enterprise made false representations to victims about jobs that were available or being offered to victims.

H.      Members and associates of the enterprise used various means to conceal the nature, source, location, ownership, and control of ill-gotten funds, including:

> 1) transfers of funds sent from victims in Central and South America to a rotating, constantly changing set of proveedores, i.e. intermediaries, in the United States, using multiple money services businesses, including but not limited to Western Union, MoneyGram, and Ria; and

> 2) conversion of wire-transferred funds to cash, re-transmission of funds, and the use of additional money transfer mechanisms and services to route funds thereafter, including but not limited to Zelle, Dolex Dollar Express, Transnetwork, and Bancomer Transfer Services among other methods.

## Structure and Operation of the Visa-Fraud Enterprise

9. Offices operating as call centers were located in Colombia and overseen by Visa-Fraud Enterprise leaders, including **EDWIN ALBERTO CORREA-DAVID** and at times **ANDRES GIRALDO-OSPINA**. **DANNA PAMELA PORRAS-MARIN** assisted **EDWIN ALBERTO CORREA-DAVID** with management of the entire enterprise and was also in charge of one office.

10. Initially, a single group of offices was overseen by **EDWIN ALBERTO CORREA-DAVID**. When the Visa-Fraud Enterprise eventually expanded, **ANDRES GIRALDO-OSPINA** assumed oversight of a second group of offices. Within that second group, **ANDRES GIRALDO-OSPINA** shared oversight of at least one office with **JULIAN GIRALDO-OSPINA**, and shared oversight of other offices with a member of the Visa-Fraud Enterprise unknown to the Grand Jury, Unindicted Co-Conspirator (UCC) #1. Most offices were located in Medellin, Colombia. One office was located in Ibague, Colombia.

11. A "secretaria" (the Spanish word for secretary) was assigned to each office, which was staffed by a small squad of workers called "asesores" (the Spanish word for advisors). Secretarias managed the asesores, directed their actions, enforced attendance and personnel requirements, supplied resources and information, and reported to higher level leaders. In some offices, the supervisory role was divided between a manager and a secretaria.

12. The Visa-Fraud Enterprise created and posted advertisements on Facebook pages and other websites purportedly offering assistance to persons seeking visas to work in the United States. The websites were designed to attract victims from throughout Central and South America, including El Salvador, Ecuador, Honduras, Guatemala, and many others.

8

13. Once a victim made an inquiry via a website (generally a Facebook advertisement), the victim's information was routed to an asesor.

14. The asesores followed a multi-step protocol guiding victims through what was falsely represented to the victim as a legitimate visa application process to enter and work in the United States.

15. The false application process typically included, but was not limited to the following steps or sequence of events by Visa-Fraud Enterprise members:

A. engaging in initial messaging and conversation with each victim to establish the victim's circumstances and interest in working in the United States;

B. directing the victim to go to a specified website link (which changed from time to time) to answer additional questions, fill out forms, and upload personal documents;

C. asking the victim for payment of various fees;

D. participating in a video call in which the Visa-Fraud Enterprise member falsely purported to be a United States official involved in the immigration process and reviewed the victim's questionnaires and documents and sometimes requested an additional payment;

E. giving each victim the opportunity to view that victim's submitted information on a website as if the information were being processed;

F. if a victim submitted required fees, conducting another video call in which the Visa-Fraud Enterprise member, purporting to be a United States official, informed the victim of the visa approval, displayed what appeared to be approved visa and/or employment authorization documents, and/or a letter from an employer reflecting an intent to offer the victim a job, and asked for further payments including money to demonstrate evidence of economic solvency;

G.      requesting that the victim make an additional payment to obtain an embassy appointment;

H.      feigning a delay while documents were supposedly being sent from the United States to the victim's home country;

I.      requiring the victim to make payment for immigration stamps; and

J.      after requesting an additional payment, giving the victim a time and date to report to the United States Embassy in the victim's home country for a purported appointment to receive the approved documents.

16.      Depending on the victim's circumstances and apparent willingness to pay, the fee requests could vary: asesores could ask for additional fees to be paid or could allow a fee to be paid in installments.

17.      Most payments made by victims were sent to recipients in the United States. The victims were told that the United States recipients were "tesoreros" (the Spanish word for treasurers) or "funcionarios autorizados" (the Spanish term for authorized officials). Internally, the Visa-Fraud Enterprise used the term "proveedores" (the Spanish word for suppliers) to refer to the intermediaries who received money transfers.

18.      Asesores told the victims who to pay at each step and arranged for the victim to submit funds by a specified manner of payment such as MoneyGram, Western Union, or Ria.

19.      When some victims expressed reluctance about paying or requested more time, asesores threatened them with termination of the application process and elimination of their opportunity to work in the United States.

10

20.     Ultimately, none of the victims ever obtained visas as a result of the Visa-Fraud Enterprise.

### The Laundering of Victim Funds

21.     Once payments were fraudulently received from the victim, members and associates of the Visa-Fraud Enterprise laundered proceeds obtained through their unlawful activities using a variety of money transmission services to conceal the nature, source, location, ownership, and control of their proceeds and to move the proceeds among members and associates of the enterprise. As money made its way from victims to the leaders of the Visa-Fraud Enterprise, it typically changed hands at least twice and often more frequently.

22.     Within the United States, there was a process for receiving money sent by victims and re-routing the funds back to Colombia. Group leaders were responsible for recruiting and coordinating a network of proveedores to receive payments submitted by the victims. Group leaders could either receive money themselves and wire the money back to Colombia themselves or arrange for another proveedor to do so.

23.     At various times, **VIVIANA URREGO-ROJAS** and **ESTEBAN ROBLEDO-CORREA** served as United States group leaders who both acted as proveedores and also obtained and supplied proveedores to the enterprise. In addition to his role as a leader and partner in the enterprise, **JULIAN GIRALDO-OSPINA** also served as a group leader and proveedor.

24.     Proveedores recruited by group leaders received victim funds sent to them at addresses in at least 16 states within the United States, including Florida. At least 30 proveedores were based in the Southern District of Florida.

11

25.     Secretarias within **EDWIN ALBERTO CORREA-DAVID**'s group of offices directed asesores which proveedores to use for each victim payment based on directions received from **EDWIN ALBERTO CORREA-DAVID** or conveyed on his behalf by **DANNA PAMELA PORRAS-MARIN**. In choosing a proveedor, **EDWIN ALBERTO CORREA-DAVID** and **DANNA PAMELA PORRAS-MARIN** rotated through the list of proveedores associated with different group leaders.

26.     In exchange for proveedor service, United States group leaders and proveedores received a percentage of the victim's money.

27.     A proveedor who received wired-transferred funds from a victim could wire it back to Colombia directly or could turn cash over to a group leader or to another person who then handled the transfer to Colombia.

28.     In order to conceal the nature, source, ownership, and control of payments made by victims, money routed to Colombia after being cycled through the United States was not always sent directly to leaders of the Visa-Fraud Enterprise in Colombia. Rather, money obtained from victims by proveedores in the United States was often sent to a proveedor in Colombia. The Colombian proveedores then distributed the money to leaders of the Visa-Fraud Enterprise in Colombia.

## Overt Acts

In furtherance of the racketeering conspiracy, and to affect the object thereof, the defendants and others known and unknown to the grand jury, committed and caused to be committed the following acts, among others, in the Southern District of Florida, and elsewhere:

1.     On or about December 9, 2021, **ANDRES GIRALDO-OSPINA** registered the website domain inmigrantesusa.org.

2. On or about December 26, 2021, **VIVIANA URREGO-ROJAS** messaged Proveedor #1 that she had sent him two transactions, one for $209 and one for $340, and that they were both associated with "Edwin."

3. On or about December 27, 2021, Proveedor #1 provided **VIVIANA URREGO-ROJAS** with breakdowns of the calculations for the transactions, reflecting a deduction of at least eight percent for their profit margin.

4. From in or about December 2021, to in or about December 2024, the following defendants coordinated at least the specified number of proveedores: a) **VIVIANA URREGO-ROJAS**: three dozen; b) **JULIAN GIRALDO-OSPINA**: almost three dozen; and c) **ESTEBAN ROBLEDO-CORREA**: one dozen.

5. From in or about December 2021, to in or about March 2025, **ESTEBAN ROBLEDO-CORREA** sent at least $59,000 from the United States to members and associates of the Visa-Fraud Enterprise in Colombia in approximately 97 transactions, including six transfers to **ANDRES GIRALDO-OSPINA** totaling at least $3,600.

6. From in or about January 2022, to in or about February 2024, **JULIAN GIRALDO-OSPINA** received in the United States at least a total of $30,000 in more than 40 transactions from victims in El Salvador, Honduras, Ecuador, and Guatemala.

7. From in or about March 2022, to in or about August 2022, **VIVIANA URREGO-ROJAS** received at least $17,000 from approximately 20 victims in El Salvador, Honduras, and Ecuador, in approximately 25 transactions, and during the same period, Proveedor #1 received more than an additional $21,000 from 22 victims in the same three countries, in approximately 30 transactions.

13

8.    From in or about April 2022, to at least in or about September 2024, Proveedor #2 received in the United States at least $50,000 in more than 90 transfers from victims in El Salvador, Honduras, Ecuador, the Dominican Republic, Nicaragua, Bolivia, and Mexico.

9.    From in or about April 2022, to in or about March 2024, Proveedor #2 sent from the United States to members and associates of the Visa-Fraud Enterprise in Colombia at least $23,000 in approximately 22 transactions, including approximately 10 transfers to **ANDRES GIRALDO-OSPINA** totaling more than $6,900.

10.    On or about May 11, 2022, **VIVIANA URREGO-ROJAS** notified Proveedor #1 of a pending Western Union transaction in her own name, and Proveedor #1 responded the next day with a message calculating the breakdown of the funds for two transactions, including **VIVIANA URREGO-ROJAS**'s eight and ten percent shares.

11.    From in or about May 2022, through in or about February 2024, **JULIAN GIRALDO-OSPINA** sent from the United States to members and associates of the Visa-Fraud Enterprise in Colombia at least $74,000 in approximately 62 transactions including one transfer to **ANDRES GIRALDO-OSPINA**.

12.    From in or about July 2022, to in or about August 2022, **ESTEBAN ROBLEDO-CORREA** received in the United States more than $2,400 in approximately four transactions from victims in Honduras.

13.    From in or about July 2022, to in or about September 2024, **VIVIANA URREGO-ROJAS** sent more than $7,500 from the United States to two members and associates of the Visa-Fraud Enterprise in Colombia, including Proveedor #3, and Proveedor #1 sent more

than $20,000 from the United States to approximately six members and associates of the Visa-Fraud Enterprise in Colombia including **VIVIANA URREGO-ROJAS** and Proveedor #3.

14.    On or about August 4, 2022, **VIVIANA URREGO-ROJAS** messaged Proveedor #1 that she was waiting for "two" that "Edwin" was going to send through MoneyGram and that she had told him to put one in her own name and one in the name of Proveedor #1.

15.    On or about August 28, 2022, **JULIAN GIRALDO-OSPINA** saved an electronic note with entries for the nine people on "Julian's Team," and a list of items and expenses, including USA flags and cameras, and a reference to an Excel formula by **ANDRES GIRALDO-OSPINA**.

16.    On or about September 2, 2022, **VIVIANA URREGO-ROJAS** messaged Proveedor #1 that only "Edwin" provided her with income that related to visas.

17.    On or about September 19, 2022, Proveedor #2 messaged **ANDRES GIRALDO-OSPINA** to ask for two big "codigos" because she needed money.

18.    On or about September 21, 2022, **VIVIANA URREGO-ROJAS** messaged Proveedor #1 that "Maria" had used false identification to pick up two visa transactions and asked if he thought they should obtain and use false identification too.

19.    From in or about September 2022, to in or about August 2023, Proveedor #4, a proveedor coordinated by **VIVIANA URREGO-ROJAS**, sent at least $19,000 from the United States to approximately 13 members and associates of the Visa-Fraud Enterprise in Colombia.

20.    On or about November 29, 2022, **VIVIANA URREGO-ROJAS** messaged Proveedor #1 that Proveedor #4 had been given two "codigos" and asked him to provide transportation assistance so Proveedor #4 could claim them (i.e. pick up the money), saying that Proveedor #4 was the only person who could do the pickup that day because **VIVIANA**

**URREGO-ROJAS**'s friend was about to get blocked (i.e. barred from making pick-ups by the money-transfer service) because she had claimed a lot.

21.     From in or about November 2022, to in or about October 2024, Proveedor #4 received at least $66,000 in approximately 106 transactions from victims in El Salvador, Honduras, Guatemala, the Dominican Republic, Ecuador, Costa Rica, Peru, and Nicaragua.

22.     On or about March 16, 2023, UCC-#2, a secretaria for the Visa-Fraud Enterprise, posted in a WhatsApp chat group that included **EDWIN ALBERTO CORREA-DAVID**, **ANDRES GIRALDO-OSPINA**, and other Visa-Fraud Enterprise members, a screen shot of a spreadsheet with the first names of seven asesores in her office, first and last names of an alias for each, and each asesor's ID number.

23.     On or about March 16, 2023, **JULIAN GIRALDO-OSPINA** messaged Proveedor #6, the name of Victim A, the amount $570, an eight-digit "codigo" number, the word MoneyGram, and a copy of a MoneyGram transmission receipt from Victim A in El Salvador to Proveedor #6 in the United States, on the same date, in the amount of $570, matching that information.

24.     On or about March 16, 2023, Proveedor #6 messaged back to **JULIAN GIRALDO-OSPINA** that she would take out the money.

25.     On or about March 17, 2023, **EDWIN ALBERTO CORREA-DAVID** posted a message in a group that included **ANDRES GIRALDO-OSPINA** and other Visa-Fraud Enterprise members, specifying the percentage share for proveedores in each city: Boston (10%), Florida (15%), Texas (13%), and California (12%).

16

26.     From on or about March 17, 2023, to on or about March 18, 2023, **JULIAN GIRALDO-OSPINA** and Proveedor #6 arranged to meet for **JULIAN GIRALDO-OSPINA** to pick up money from Proveedor #6.

27.     On or about March 22, 2023, **JULIAN GIRALDO-OSPINA** messaged Proveedor #6 that he had the names and identifications of the persons who will receive money in Colombia and asked what else Proveedor #6 needed to enter them in the system.

28.     On or about March 22, 2023, Proveedor #6 replied that she needed the names and dates of birth of intended recipients of money in Colombia and where the money was to be sent, to which **JULIAN GIRALDO-OSPINA** replied asking whether he needed to supply bank account numbers, or just note the location, i.e., Medellin, Colombia.

29.     On or about March 22, 2023, **JULIAN GIRALDO-OSPINA** agreed to meet with Proveedor #6 to give her the information on the Colombian proveedores and told her that he could explain to her how it works and that it was going to be really good for her.

30.     On or about March 23, 2023, **JULIAN GIRALDO-OSPINA** messaged Proveedor #6, the name of Victim B, the amount $980, an eight-digit "codigo" number, the word Money, and information that it was sent from El Salvador, and he offered to come by the store to send it so that she could see how it worked and how easy it was.

31.     On or about March 23, 2023, Proveedor #6 messaged **JULIAN GIRALDO-OSPINA** seeking clarification that when she received money, she was to send it again moments later, to which **JULIAN GIRALDO-OSPINA** replied that he would make her more money in that the idea was for her not only to profit from the transactions sent under her name but also all the transactions that she entered.

17

32.     On or about March 23, 2023, Proveedor #6 received $980 sent from El Salvador by Victim B by MoneyGram, after which Proveedor #6 sent $823 from California by MoneyGram to **EDWIN ALBERTO CORREA-DAVID** in Colombia.

33.     On or about March 23, 2023, **JULIAN GIRALDO-OSPINA** saved a screenshot of a chat entitled "Team Julian," with a member named "Secretaria," that included an exchange with a Visa-Fraud Enterprise member or associate unknown to the Grand Jury (UCC-#3), in which **JULIAN GIRALDO-OSPINA** messaged UCC-#3, that to avoid problems, UCC-#3 should not say anything, that **JULIAN GIRALDO-OSPINA** would handle matters, and that UCC-#3 should remember that **ANDRES GIRALDO-OSPINA** is the boss.

34.     On or about March 31, 2023, **EDWIN ALBERTO CORREA-DAVID** posted to a WhatsApp chat group entitled "Secretarias," which included **DANNA PAMELA PORRAS-MARIN** and secretarias of other Visa-Fraud Enterprise offices, two images of a sheet that appeared to be a pamphlet relating to a company named One Links World.

35.     On or about April 11, 2023, **ANDRES GIRALDO-OSPINA** messaged **JULIAN GIRALDO-OSPINA** an image of an embossed United States Department of State seal, to which **JULIAN GIRALDO-OSPINA** replied that it had turned out really well.

36.     On or about April 12, 2023, **EDWIN ALBERTO CORREA-DAVID** posted to the Secretarias group that we are (i.e. the enterprise is) going to use a standard price for the forms, both in **ANDRES GIRALDO-OSPINA**'s office and ours, since it is the same company and there should be one price.

37.     On or about April 17, 2023, **EDWIN ALBERTO CORREA-DAVID** posted to the Secretarias group prohibiting asesores from taking their phones from the office and setting the penalty for doing so at 200,000 pesos each for the worker and the secretary.

38.     On or about April 19, 2023, **EDWIN ALBERTO CORREA-DAVID** posted to the Secretarias group that Western Union should not be used for small payments of less than $900 to avoid burning the proveedores and to use MoneyGram or Ria for those.

39.     On or about April 22, 2023, **EDWIN ALBERTO CORREA-DAVID** posted to the Secretarias group requiring staff to arrive on Saturdays at 10:00 a.m. and to provide advance notice if they wanted Saturday off.

40.     On or about April 24, 2023, **EDWIN ALBERTO CORREA-DAVID** posted to the Secretarias group images of One Links World profile pages for asesores in the office of UCC-#2 and others, using alias names that had been supplied by UCC-#2 in March.

41.     On or about April 29, 2023, **EDWIN ALBERTO CORREA-DAVID** posted to the Secretarias group a message offering a bonus of 500,000 pesos if an office brought in $10,000 per week and for group members to push the staff and motivate them to make money.

42.     On or about May 9, 2023, when **JULIAN GIRALDO-OSPINA** messaged Proveedor #6 to ask what time she would be at the store so that Proveedor #6 could retrieve and cash pending transactions, Proveedor #6 replied that she could not do it because her boss was there and she would have to wait until he left.

43.     On or about May 10, 2023, after **JULIAN GIRALDO-OSPINA** messaged Proveedor #6 to tell her to take out the two biggest transactions, Proveedor #6 replied that she would only be able to get the biggest ones and then responded that she had claimed three of them.

44.     On or about May 17, 2023, **EDWIN ALBERTO CORREA-DAVID** posted to the Secretarias group a message telling people to approve forms within a day or two of submission.

45.     On or about May 20, 2023, **JULIAN GIRALDO-OSPINA** messaged Proveedor #6 not to forget about today's transaction and to see if they could send it to Colombia before 11:00.

46.     On or about May 20, 2023, **EDWIN ALBERTO CORREA-DAVID** messaged the Secretarias group announcing that those who arrive after 10:20 would be subject to a 50,000-peso fine.

47.     On or about May 24, 2023, **DANNA PAMELA PORRAS-MARIN** messaged the Secretarias group requesting that she be notified whether or not proveedores had been used.

48.     On or about May 26, 2023, **EDWIN ALBERTO CORREA-DAVID** messaged the Secretarias group asking for a report on how many forms each person had sent out that day.

49.     On or about May 31, 2023, **EDWIN ALBERTO CORREA-DAVID** messaged the Secretarias group a list of ten payments to five proveedores coordinated by **ESTEBAN ROBLEDO-CORREA**.

50.     On or about June 6, 2023, **EDWIN ALBERTO CORREA-DAVID** messaged the Secretarias group the image of a counterfeit United States employment authorization card in the name of Victim C from Ecuador and asked whose document it was, to which one member of the Visa-Fraud Enterprise responded that the document was hers and another member of the Visa-Fraud Enterprise responded that the photograph was hers.

51.     On or about June 6, 2023, **EDWIN ALBERTO CORREA-DAVID** messaged the Secretarias group complaining about the error made when the photograph of one person on Person C's employment authorization card was combined with the information of another person.

20

52.     On or about June 7, 2023, **EDWIN ALBERTO CORREA-DAVID** messaged the Secretarias group requesting that they provide copies of the receipts for each payment made by a victim.

53.     On or about June 12, 2023, Proveedor #7 received in the Southern District of Florida a wire transfer for $845 sent by Victim D from Guatemala at the behest of a Visa-Fraud Enterprise member unknown to the Grand Jury.

54.     On or about June 13, 2023, **ANDRES GIRALDO-OSPINA** registered the website, Wellsfargoworld.com, which was a counterfeit website for Wells Fargo Bank.

55.     On or about June 13, 2023, **DANNA PAMELA PORRAS-MARIN** posted in the Secretarias group the image of a mobile web page entitled "Procesos Migratorios," that displayed a telephone number, a Texas address, a link to call, and name of the website, https://www.onelinksworld.com, and she inquired if anyone knew whose this is, in response to which UCC-#2 replied that the phone number was that of an asesor in her office.

56.     On or about June 29, 2023, Proveedor #8 received in the Southern District of Florida a wire transfer for $402.17 sent by Victim E  from Honduras at the behest of a Visa-Fraud Enterprise member unknown to the Grand Jury.

57.     From in or about June 2023, to on or about December 6, 2024, a Visa-Fraud Enterprise member or associate caused two forged bank statements each with the name of Victim D and a purported account number to be added to a counterfeit Wells Fargo Bank website at https://www.wellssfargoworldd.com.

58.     From in or about June 2023, to on or about August 7, 2024, a Visa-Fraud Enterprise member or associate caused a forged bank statement with the name of Victim E  and a purported

account number to be added to the counterfeit Wells Fargo Bank website at https://www.wellssfargoworldd.com.

59.     From in or about June 2023, to in or about October 2024, Proveedor #5, a proveedor coordinated by **VIVIANA URREGO-ROJAS**, received in the United States at least $65,000 in a total of at least 100 transactions from victims in El Salvador, Guatemala, Honduras, the Dominican Republic, Ecuador, Nicaragua, Bolivia, and Peru.

60.     From in or about June 2023, to in or about October 2024, Proveedor #5 sent from the United States to members and associates of the Visa-Fraud Enterprise in Colombia at least $60,000, in at least 65 transactions, including approximately 20 transactions totaling at least $14,000 to **VIVIANA URREGO-ROJAS**, and approximately six additional transactions totaling at least $6,000 to Proveedor #1 and to Proveedor #3.

61.     On or about July 6, 2023, **ANDRES GIRALDO-OSPINA** registered the website Usaidd.org, which falsely appeared to be a United States government website for the United States Agency for International Development.

62.     On or about July 11, 2023, **ANDRES GIRALDO-OSPINA** registered the website Usscis.org, which falsely appeared to be a United States government website for the United States Citizenship and Immigration Services.

63.     On or about July 20, 2023, **JULIAN GIRALDO-OSPINA** saved a screenshot showing parts of two lists entitled "Proveedores Bancolombia Med[text obstructed]" which had at least thirteen names including the name of **EDWIN ALBERTO CORREA-DAVID**.

64.     On or about July 21, 2023, **EDWIN ALBERTO CORREA-DAVID** messaged the Secretarias group that they were testing new pages, would start on Wednesday with the new pages,

22

and that anyone who was going to use the new sites would need to get authorization codes from **ANDRES GIRALDO-OSPINA**.

65.     On or about July 27, 2023, a member of the Visa-Fraud Enterprise using the name "Chris Rouse Smith," and purporting to be an attorney in the United States working on behalf of the United States Agency for International Development to make H-2 visas available to qualified individuals from Central and South America, messaged Victim F, in response to an inquiry Victim F had made on a Facebook page that advertised that it could assist foreigners with obtaining visas to work in the United States.

66.     On or about July 28, 2023, "Chris Rouse Smith" informed Victim F that once she created a general profile and submitted the necessary documentation, such as the "DS-160" (Online Nonimmigrant Visa Application), Victim F would, if approved, be required to pay a deposit of $1,100 to obtain from Smith an identification card, a Social Security card, and a Wells Fargo bank account and banking card.

67.     On or about July 28, 2023, "Chris Rouse Smith" provided Victim F with a link to the website usaidd.org, at which she could log in with a provided code and submit information, such as her date of birth and national identification number.

68.     From on or about July 28, 2023, to on or about August 14, 2023, a member of the Visa-Fraud Enterprise created documents in Victim F's name, including a signed letter from the "Directora USCIS," with an unauthorized replica of the United States Department of Homeland Security seal and "U.S. Citizenship and Immigration Services" prominently displayed in the letter's header section; the letter instructed Victim F to send $1,100.00 via MoneyGram to Proveedor #9, an individual in Miami, described as a "funcionario autorizado" or authorized

23

official, in order to obtain or otherwise advance her H-2B visa, and made the documents accessible to Victim F on the usscis.org site via a provided link.

69.     From in or around July 2023, to on or about August 7, 2024, a Visa-Fraud Enterprise member or associate caused a forged bank statement with the name of Victim F  and a purported account number to be added to the counterfeit Wells Fargo Bank website at https://www.wellssfargoworldd.com.

70.     On or about August 9, 2023, a member of the Visa-Fraud Enterprise using the name "Miller Garcia" (whom "Chris Rouse Smith" had previously identified as an attorney with "USCIS,") initiated a video call with Victim F and told her that she had been approved for an H-2 visa and would thereafter receive payment instructions to finalize the process.

71.     On or about August 10, 2023, "Chris Rouse Smith" sent Victim F a text message with an embedded hyperlink that prominently featured an unauthorized replica of the United States Department of Homeland Security seal, next to the phrase "USCIS – and Immigration Services," along with the web address usscis.org.

72.     On August 10, 2023, **EDWIN ALBERTO CORREA-DAVID** posted in a chat with **DANNA PAMELA PORRAS-MARIN** the name and contact information for a proveedor in the Southern District of Florida, Proveedor #7.

73.     On or about August 14, 2023, **ANDRES GIRALDO-OSPINA** registered the website Jobssolutionsusa.com, which falsely claimed to be the website of a United States company willing to assist foreigners to find employment in the United States.

74.     On or about August 16, 2023, **DANNA PAMELA PORRAS-MARIN** posted in a chat with **EDWIN ALBERTO CORREA-DAVID** a list entitled PROVEEDORES

VIVIANA.docx, which was a list of eleven proveedores, made up of three in Virginia, one in Boston, two in Tampa, Florida, two in New York, and two in New Jersey, and including Proveedor #4, without a location.

75.     On or about August 17, 2023, **DANNA PAMELA PORRAS-MARIN** posted in a chat with **EDWIN ALBERTO CORREA-DAVID** a list entitled PROVEEDORES ESTEBAN, which was a list of five people located in Massachusetts.

76.     On or about August 31, 2023, **DANNA PAMELA PORRAS-MARIN** messaged to **EDWIN ALBERTO CORREA-DAVID** that she was going to send him seven Western Union proveedores and asked if she should send him proveedores from **VIVIANA URREGO-ROJAS**, **ESTEBAN ROBLEDO-CORREA**, and from **EDWIN ALBERTO CORREA-DAVID**'s friend.

77.     On or about August 31, 2023, **DANNA PAMELA PORRAS-MARIN** posted a list of 20 proveedores in a one-on-one chat with **EDWIN ALBERTO CORREA-DAVID**.

78.     On or about September 1, 2023, a member of the Visa-Fraud Enterprise provided Victim G a copy of what appeared to be a United States Employment Authorization card with the name and pedigree information of Victim G on it.

79.     On or about September 4, 2023, **DANNA PAMELA PORRAS-MARIN** sent **EDWIN ALBERTO CORREA-DAVID** a screenshot of a list entitled PROVEEDORES VIVIANA, which was a list of nine proveedores, from New Jersey, Boston, New York, and Tampa, Florida, including Proveedor #5.

80.     On or about September 6, 2023, **EDWIN ALBERTO CORREA-DAVID** established a WhatsApp Proveedores group to manage the use of proveedores.

81.     On or about September 11, 2023, **DANNA PAMELA PORRAS-MARIN** sent **EDWIN ALBERTO CORREA-DAVID** a screenshot of a list entitled PROVEEDORES VIVIANA, which included a total of total six proveedores, in Boston and New Jersey, including Proveedor #5.

82.     On or about September 17, 2023, Proveedor #9 received in the Southern District of Florida a wire transfer for $326.74 sent by Victim E  from Honduras at the behest of a Visa-Fraud Enterprise member unknown to the Grand Jury.

83.     On or about October 2, 2023, when a member of the Visa-Fraud Enterprise messaged in the Secretarias group an image of a two-factor authentication screen for a website to use with the email travelwait87@gmail.com, **DANNA PAMELA PORRAS-MARIN** told her that **ANDRES GIRALDO-OSPINA** would have to give access.

84.     On or about October 6, 2023, a member of the Visa-Fraud Enterprise using the name "Alejandro Lopez," the company name "One Links World," and claiming to be an advisor and an immigration attorney from the State of Texas, offered to provide free assistance to Victim H (and ultimately her prospective husband, Victim I), in coming to the United States, even though Victim H had been previously deported.

85.     On or about October 11, 2023, "Alejandro Lopez" sent Victim H a link to https://www.usaidd.org/ and a code to enter to register.

86.     On or about October 12, 2023, "Alejandro Lopez" sent Victim H false documents purporting to be visas approvals for Victim H and Victim I, each bearing unauthorized replicas of the seals of the United States Department of State and United States Department of Homeland Security.

26

87.     On or about October 13, 2023, Proveedor #7 received in the Southern District of Florida and Proveedor #11 received in Massachusetts $720 each sent by Victim H at the behest of Visa-Fraud Enterprise member "Alejandro Lopez."

88.     On or about October 13, 2023, "Alejandro Lopez" sent Victim H false documents purporting to be employment contracts in the name of Victim H as a cleaning aide and Victim I as a construction worker, for One Links World in Houston, Texas.

89.     On or about October 18, 2023, Visa-Fraud Enterprise member "Alejandro Lopez" sent Victim H an image of false documents that purported to be a Social Security card, a United States Employment Authorization Card, and a Wells Fargo bank card, in the name of Victim I.

90.     On or about October 19, 2023, Proveedor #12 received in New Jersey $550 sent by Victim H at the behest of Visa-Fraud Enterprise member "Alejandro Lopez."

91.     On or about October 23, 2023, Visa-Fraud Enterprise member "Alejandro Lopez" sent Victim H an image of false documents that purported to be a Social Security card, a United States Employment Authorization Card, and a Wells Fargo bank card, all in the name of Victim H.

92.     On or about October 23, 2023, **EDWIN ALBERTO CORREA-DAVID** messaged **DANNA PAMELA PORRAS-MARIN** giving her names of proveedores to use and telling her to rotate them and use one daily to each.

93.     On or about November 3, 2023, **EDWIN ALBERTO CORREA-DAVID** posted a voice message in the Secretarias group complaining that they've been doing this for two years and people still don't know how to make appointments, to which **DANNA PAMELA PORRAS-MARIN** replied she makes the appointments when she is given photos and information.

94.     On or about November 3, 2023, when a member of the Visa-Fraud Enterprise messaged in the Secretarias group an image of a MoneyGram receipt for a payment of 5,163 Honduran lempira from a victim in Honduras to a recipient in Colombia, **EDWIN ALBERTO CORREA-DAVID** responded that the proveedor to whom the payment was sent was "de Julian," i.e. from **JULIAN GIRALDO-OSPINA**.

95.     On or about November 14, 2023, when a member of the Visa-Fraud Enterprise complained in the Secretarias group that the forms page was down, **EDWIN ALBERTO CORREA-DAVID** responded that **ANDRES GIRALDO-OSPINA** would fix it momentarily.

96.     On or about December 5, 2023, when several people complained in the Secretarias group that a tracking page was not working, **EDWIN ALBERTO CORREA-DAVID** responded that he already asked **ANDRES GIRALDO-OSPINA** about it.

97.     On or about December 10, 2023, **ANDRES GIRALDO-OSPINA** registered the website Worldservicepostal.us.

98.     On or about December 19, 2023, **EDWIN ALBERTO CORREA-DAVID** posted in his chat with **DANNA PAMELA PORRAS-MARIN**, a list of more than three dozen proveedores, broken down into sections including one entitled "PROVEDORES VIVIANA" (including Proveedores #4 and #5).

99.     On or about December 22, 2023, **EDWIN ALBERTO CORREA-DAVID** messaged the Secretarias group that all the computers are anchored to **ANDRES GIRALDO-OSPINA**'s and not to put "patientes" from other offices in the system or a fine of 10,000,000 pesos would be imposed.

28

100.  On or about December 29, 2023, when members of the Visa-Fraud Enterprise discussed in the Secretarias group that the forms page had reached its capacity, a member of the Visa-Fraud Enterprise responded that only **ANDRES GIRALDO-OSPINA** had the ability to delete forms.

101.  On or about January 5, 2024, **ANDRES GIRALDO-OSPINA** registered the website Govacationworld.com, which falsely claimed to be a travel agency website for the purchase of airline tickets for travel to the United States.

102.  On or about January 6, 2024, a member of the Visa-Fraud Enterprise using the name "Ibrahim Benson" sent Victim J a form that purported to be an "intention to contract" form from Sonia's Professional Cleaning, stating the intention to hire Victim J as of March 4, 2024.

103.  On or about January 9, 2024, **DANNA PAMELA PORRAS-MARIN** provided the name and information for Proveedor #4 to receive a $600 payment by Western Union, after which a member of the Visa-Fraud Enterprise unknown to the Grand Jury requested Victim J to send $600 from El Salvador to Proveedor #4 in New York to cover fees associated with Victim J's effort to obtain United States work authorization and employment.

104.  On or about January 9, 2024, Proveedor #4 received in the United States $600 sent from El Salvador by Victim J, and a secretaria for the Visa-Fraud Enterprise (UCC-#4) posted a message in the Proveedores group that day confirming Proveedor #4's receipt of the $600.

105.  On or about January 11, 2024, **ANDRES GIRALDO-OSPINA** messaged **JULIAN GIRALD-OSPINA** with a question from a secretaria about how the latter was going to pay the secretaria for the "codigos" coming down.

29

106. On or about January 11, 2024, **JULIAN GIRALD-OSPINA** messaged **ANDRES GIRALDO-OSPINA** asking how much they currently had to pay Facebook, to which the latter replied, about $600 something.

107. On or about January 11, 2024, **JULIAN GIRALD-OSPINA** sent **ANDRES GIRALDO-OSPINA** an image of a partially filled-out spreadsheet about "codigos," with two entries, one of which indicated that Victim K had sent a "codigo" of $805 on January 11, 2024, to a proveedor identified only by a first name.

108. On or about January 12, 2024, **JULIAN GIRALD-OSPINA** messaged **ANDRES GIRALDO-OSPINA** that he had sent the money for the two transactions and included a sheet of calculations for the transactions on the sheet, showing adjustments for the exchange rate and a fee for a Colombian proveedor.

109. From on or about September 23, 2023, to on or about December 6, 2024, a Visa-Fraud Enterprise member or associate caused the name of Victim K and a purported account number to be added to the counterfeit website for Wells Fargo Bank, at https://www.wellssfargoworldd.com.

110. On or about January 15, 2024, **EDWIN ALBERTO CORREA-DAVID** posted to the Secretarias group images of a travel website "Traveling World" and the name of the website disenometrico.com and messaged sets of log-in information.

111. On or about January 17, 2024, **DANNA PAMELA PORRAS-MARIN** provided the name and information for Proveedor #4 in the Proveedores group to receive $500 by Western Union, after which a member of the Visa-Fraud Enterprise requested Victim J to send $500 from

El Salvador to Proveedor #4 in New York to cover fees associated with Victim J's effort to obtain United States work authorization and employment.

112.    On or about January 19, 2024, after **EDWIN ALBERTO CORREA-DAVID** posted in the Proveedores group that two "codigos" sent to Proveedor #4 in New York had to be changed, **DANNA PAMELA PORRAS-MARIN** posted the name and information of Proveedor #13, an alternative proveedor coordinated by **VIVIANA URREGO-ROJAS**.

113.    On or about January 19, 2024, Proveedor #13 received in the United States $500 originally sent from El Salvador by Victim J to Proveedor #4 on January 17, 2024.

114.    On or about January 23, 2024, **EDWIN ALBERTO CORREA-DAVID** posted to the Secretarias group a link to a fraudulent website for Wells Fargo Bank, https://www.wellssfargoworldd.com, for use by the asesores in each office.

115.    On or about January 23, 2024, **EDWIN ALBERTO CORREA-DAVID** messaged **DANNA PAMELA PORRAS-MARIN** a link to a website hosting site.

116.    On or about January 23, 2024, **DANNA PAMELA PORRAS-MARIN** registered the counterfeit website usaidworld.us, which falsely appeared to be a United States government website for the United States Agency for International Development.

117.    On or about January 23, 2024, **EDWIN ALBERTO CORREA-DAVID** messaged **DANNA PAMELA PORRAS-MARIN**, the text of a five-section form with more than 25 questions, covering personal information, professional and academic history, personal and family relationships, immigration and legal history, and a list of the identification that the user was required to upload.

118.   On or about January 25, 2024, when a secretaria for the Visa-Fraud Enterprise (UCC-#5) posted in the Secretarias group that images were not loading in the employment authorization program, **EDWIN ALBERTO CORREA-DAVID** referred her to **ANDRES GIRALDO-OSPINA**.

119.   On or about January 25, 2024, **DANNA PAMELA PORRAS-MARIN** registered in her name the counterfeit website ucsisworld.us, which falsely appeared to be a United States government website for the United States Citizenship and Immigration Services.

120.   On or about January 26, 2024, Proveedor #5 received in the United States $600 sent from El Salvador by Victim L at the behest of a Visa-Fraud Enterprise member.

121.   From in or about January 2024, to in or about December 2024, a member of the Visa-Fraud Enterprise caused Victim L's name to be added to the websites at servicepostalworld.us, flourservices.us (as a construction worker), and ucsisworld.us.

122.   On or about January 26, 2024, **EDWIN ALBERTO CORREA-DAVID** posted links in the Secretarias group to a new Usaidworld.us website, complete with several different emails and passwords and informed the group members in a voice message about which person should use each email and log-in.

123.   On or about January 26, 2024, **DANNA PAMELA PORRAS-MARIN** provided in the Proveedores group the name and information for Proveedor #14 to receive $920 by Western Union, after which a member of the Visa-Fraud Enterprise requested Victim J to send $920 from El Salvador to Proveedor #14 in Texas to cover fees associated with P's effort to obtain United States work authorization and employment.

124.    On or about January 26, 2024, Proveedor #14 received in the United States the $920 sent from El Salvador by Victim J, and UCC-#4 posted a message in the Proveedores group that day confirming the receipt by Proveedor #14 of $920.

125.    On or about January 29, 2024, Proveedor #14 sent $770 by Dolex Dollar Express from the United States to **EDWIN ALBERTO CORREA-DAVID** in Colombia.

126.    On or about February 5, 2024, **DANNA PAMELA PORRAS-MARIN** registered the website soniasprofesionalcleaning.us, which falsely purported to be a United States company willing to hire foreigners in the United States pursuant to an H-2B visa.

127.    On or about February 5, 2024, **DANNA PAMELA PORRAS-MARIN** registered the website Flourservices.us, a counterfeit of the website for the United States company Fluor Corporation.

128.    On or about February 5, 2024, **EDWIN ALBERTO CORREA-DAVID** disseminated in the Secretarias chat multiple sets of log-in credentials and the link for flourservices.us.com and multiple sets of log-in credentials and the link for soniasprofesionalcleaning.us.

129.    On or about February 6, 2024, a member of the Visa-Fraud Enterprise using the name "Lic Leonardo Zapata" responded to an inquiry that Victim M had made on the Facebook page Tramites Migratorios, falsely identified himself as an advisor and immigration attorney for the State of Texas, offered assistance in helping Victim M obtain an H-2B visa for employment in the United States, and provided a link to the website usaidworld.us for her to use to supply information.

130.    On or about February 9, 2024, "Lic Leonardo Zapata" messaged Victim M four pages including a psychological assessment form and a conflict-of-interest form, each page bearing an unauthorized replica of the United States Agency for International Development seal.

131.    On or about February 13, 2024, "Lic Leonardo Zapata" messaged Victim M a false document that purported to be an approved "H2-B" visa bearing unauthorized replicas of the seals of the United States Department of State and the United States Department of Homeland Security.

132.    On or about February 14, 2024, "Lic Leonardo Zapata" messaged Victim M false documents including: (A) what purported to be a letter signed by the Administrator of "USAID" congratulating Victim M on being hired as a Cleaning Area employee and bearing unauthorized replicas of the seals of the United States Agency for International Development and the United States Department of Labor; and (B) what purported to be an employment contract offering Victim M work as a cleaner for "USAID" and bearing an unauthorized replica of the seal of the United States Agency for International Development.

133.    On or about February 15, 2024, **EDWIN ALBERTO CORREA-DAVID** messaged links to the Secretarias group:  a) a link to a counterfeit United States government website to use to fill out United States Agency for International Development forms, https://usaidworld.us/usaidworld001/; b) a link to the front page of that site; c) a link to send to applicants for them to see the approval process, https://ucsisworld.us; d) a new link for applicants to use to track the documents https://servicepostalworld.us/; e) a link to send to applicants for a purported employer, Flour services, https://flourservices.us/; f) a link to a purported employer website, https://soniasprofesionalcleaning.us/; g) a link for purported insurance, which was a counterfeit     site     purporting     to     be     a     United     States     government     website,

https://www.mmedicaree.org; and h) a link to a counterfeit of the Wells Fargo Bank website, https://www.wellssfargoworldd.com.

134.    On or about February 15, 2024, after "Lic Leonardo Zapata" provided Victim M with the information on Proveedor #15, Proveedor #15 received in the United States $1,037 sent by Victim M at the behest of "Lic Leonardo Zapata."

135.    On or about February 16, 2024, a Visa-Fraud Enterprise member caused Victim N in El Salvador to initiate a wire transfer for $900 from El Salvador to Proveedor #7 in the Southern District of Florida.

136.    On or about February 17, 2024, **EDWIN ALBERTO CORREA-DAVID** messaged in the Secretarias group about a $900 payment from Victim N in El Salvador to Proveedor #7 that could not be picked up because the sender had added an extra letter to the proveedor's last name.

137.    On or about February 20, 2024, **EDWIN ALBERTO CORREA-DAVID** messaged in the Secretarias group a reminder to use MoneyGram for transfers under $700 because proveedores are complaining.

138.    On or about February 21, 2024, **DANNA PAMELA PORRAS-MARIN** posted in her one-on-one chat with **EDWIN ALBERTO CORREA-DAVID** a list of proveedores entitled PROV ESTEBAN.

139.    On or about February 21, 2024, **DANNA PAMELA PORRAS-MARIN** at the direction of **EDWIN ALBERTO CORREA-DAVID**, posted in the Proveedores group the names and information for Proveedor #16 to receive $1,500 by Western Union, after which a member of the Visa-Fraud Enterprise requested Victim J to send $1,500 from El Salvador to Proveedor #16

35

in Illinois to cover fees associated with Victim J's effort to obtain authorization to work in the United States and employment there.

140.    On or about February 21, 2024, Proveedor #16 received in the United States $1,500 sent from El Salvador by Victim J, and UCC-#4 posted a message in the Proveedores group that day confirming the receipt by Proveedor #16 of the $1,500.

141.    On or about February 21, 2024, when **DANNA PAMELA PORRAS-MARIN** asked **ESTEBAN ROBLEDO-CORREA** in a one-on-one chat about his proveedores, he responded with information about which of "mis proveedores" (Spanish for "my proveedores") were available.

142.    On or about February 29, 2024, **EDWIN ALBERTO CORREA-DAVID** posted in the Secretarias group, warning that new people should not be allowed to come in without his permission and stating that the secretarias would be fined 300,000 pesos if it happened.

143.    On or about February 29, 2024, **DANNA PAMELA PORRAS-MARIN** messaged **EDWIN ALBERTO CORREA-DAVID**: (A) a copy of a purported "H2B" visa approval for Victim O according to "state immigration law of the state of Texas" and bearing unauthorized replicas of the seals of the United States Department of State and United States Department of Homeland Security; and (B) a copy of a letter from "William Joseft Brown F." [sic] purportedly the "Gerente General" of the United States Agency for International Development, bearing the seal of the United States Agency for International Development, and offering Victim O a construction job for the United States Agency for International Development.

144.    From in or about February 2024, to on or about April 10, 2024, a Visa-Fraud Enterprise asesor caused a forged bank statement in the name of Victim N with a purported account

number to be added to the counterfeit Wells Fargo Bank website at https://www.wellssfargoworldd.com.

145.    On or about March 7, 2024, Proveedor #7 received, in the Southern District of Florida, $700 by Western Union sent from El Salvador by Victim P at the behest of a member of the Visa Fraud-Enterprise.

146.    From in or about February 2024, to on or about March 25, 2024, a Visa-Fraud Enterprise asesor caused a forged bank statement in the name of Victim P with a purported account number to be added to the counterfeit Wells Fargo Bank website at https://www.wellssfargoworldd.com.

147.    On or about March 7, 2024, **DANNA PAMELA PORRAS-MARIN**, at the direction of **EDWIN ALBERTO CORREA-DAVID**, provided in the Proveedores group the name and information for Proveedor #17 to receive $1,200 by Western Union, after which a member of the Visa-Fraud Enterprise requested Victim J to send $1,200 from El Salvador to Proveedor #17 in Texas.

148.    On or about March 7, 2024, Proveedor #17, received in the United States $1,200 sent from El Salvador by Victim J, and UCC-#4 posted in the Proveedores group confirming the receipt by Proveedor #17 of the $1,200.

149.    From on or about March 19, 2024, through on or about April 29, 2024, **DANNA PAMELA PORRAS-MARIN** participated in a multi-office group chat with **EDWIN ALBERTO CORREA-DAVID** and the secretarias and managers of groups, including groups overseen by **ANDRES GIRALDO-OSPINA**, for the purpose of keeping track of which office was working with which visa seeker.

37

150. On or about March 20, 2024, members of the Visa-Fraud Enterprise referenced Victim R in a chat group established to keep track of which office was handling each visa seeker.

151. On or about March 20, 2024, Proveedor #14 received in the United States from Victim Q in Honduras a wire transfer of $990.

152. On or about March 21, 2024, Proveedor #14 sent $830.00 by Dolex Dollar Express from the United States to **EDWIN ALBERTO CORREA-DAVID** in Colombia.

153. On or about March 23, 2024, Proveedor #14 sent $890.00 by Dolex Dollar Express from the United States to **EDWIN ALBERTO CORREA-DAVID** in Colombia.

154. From on or about January 30, 2024, and on or about October 31, 2024, a member of the Visa-Fraud TCO, added two false bank statements in Victim Q's name and with two different purported account numbers to the counterfeit Wells Fargo Bank website at https://www.wellssfargoworldd.com.and added Victim Q's information into the websites for soniasprofessionalcleaning.us, giopostalservice.com, and servicepostalworld.us, the last of these showing a purported tracking number from Houston to Honduras.

155. On or about March 30, 2024, a member of the Visa-Fraud Enterprise requested Victim J to send $1,500 from El Salvador to Proveedor #18, a proveedor in New Jersey, to cover fees associated with Victim J's effort to obtain United States work authorization and employment, and Proveedor #18 received in the United States $1,500 sent from El Salvador by Victim J.

156. On or about April 5, 2024, **EDWIN ALBERTO CORREA-DAVID** inquired in the Secretarias chat about Victim J.

157. On or about April 15, 2024, a Visa-Fraud Enterprise asesor using the name "Lic Michael Candela" engaged in a video call with Victim J during which he showed her what

38

purported to be a United States Social Security card in her name, a Wells Fargo bank card in her name, a California driver's license in her name and a postal receipt related to documents in her case.

158.    On or about April 17, 2024, Proveedor #19, a proveedor coordinated by **ESTEBAN ROBLEDO-CORREA,** received in the United States over $1,000 sent from Guatemala by Victim R.

159.    On or about April 17, 2024, "Lic Leonardo Zapata" sent Victim M an "Appointment Assignment" form bearing the United States Department of State seal that falsely notified her of an appointment at the United States Embassy in El Salvador on April 22, 2024, at 10:30 a.m.

160.    From in or around March 2024, to on or about May 6, 2024, a member of the Visa-Fraud Enterprise created a profile of Victim R on the counterfeit United States Citizenship and Immigration Services website, ucsisworld.us, and from in or about March 2024 to February 18, 2025, created a false "intention to contract" document on the counterfeit website for Flour Corporation, flourservices.us.

161.    On or about April 25, 2024, **EDWIN ALBERTO CORREA-DAVID** posted a reminder in the Secretarias group that he needed information about what each payment was for and that only the $1,200 down payment could be in two parts, and that for an embassy appointment there needed to be a payment of $920 and at least $1,000 for a showing of solvency.

162.    On or about April 25, 2024, **DANNA PAMELA PORRAS-MARIN** posted in the Proveedores chat group the names and information for four proveedores, including Proveedores #20, #21, and #22, after which a member of the Visa-Fraud Enterprise requested Victim J to send

$1,500 from El Salvador each to Proveedores #20, #21, and #23, all in New Jersey, and $2,000 to Proveedor #22 in the Southern District of Florida, to cover fees associated with Victim J's effort to obtain United States work authorization and employment.

163.    On or about April 26, 2024, **DANNA PAMELA PORRAS-MARIN** posted in the Proveedores group the names and information for Proveedores #15 and Proveedor #24, after which a member of the Visa-Fraud Enterprise requested Victim J to send $1,500 from El Salvador to Proveedor #15 and 1,000 to Proveedor #24.

164.    On or about April 26, 2024, UCC-#4 posted a message in the Proveedores group confirming the receipt by Proveedores #20, #21, and #15 of $1,500, Proveedor #22 of $2,000, and Proveedor #24 of $1,000.

165.    On or about May 9, 2024, **DANNA PAMELA PORRAS-MARIN** posted in the Proveedores group the names and information for Proveedores #25 and #26, both in Boston Massachusetts, after which a member of the Visa-Fraud Enterprise requested Victim J to send $1,500 each from El Salvador to Proveedores #25 and #26.

166.    On or about May 9, 2024, a Visa-Fraud Enterprise member unknown to the Grand Jury (UCC-#6) posted in the Proveedores group confirming the receipt by Proveedor #25 and #26 of $1,500 each.

167.    From in or about January 2024, to in or about August 2024, a Visa-Fraud Enterprise asesor caused the name of Victim J and a purported account number to be added to the counterfeit Wells Fargo Bank website at https://www.wellssfargoworldd.com and the counterfeit United States government site, mmedicaree.org.

168.    On or about June 6, 2024, **ANDRES GIRALDO-OSPINA** received from another Visa-Fraud Enterprise member the information and photograph of Victim S and responded by providing a purported United States employment authorization card and a State of California benefits identification card in the name of Victim S.

169.    On or about June 7, 2024, **JULIAN GIRALDO-OSPINA** saved in his iPhone a flow chart in tree form of the steps in the work visa process and the fees to be charged at each stage.

170.    On or about July 1, 2024, after **ANDRES GIRALDO-OSPINA** messaged **JULIAN GIRALDO-OSPINA** requesting a proveedor who could receive $1,200 by Western Union, **JULIAN GIRALDO-OSPINA** responded by providing the name of Proveedor #27, a proveedor in Richmond, California.

171.    On or about July 1, 2024, **ANDRES GIRALDO-OSPINA** messaged **JULIAN GIRALDO-OSPINA** the image of a transmission receipt from Victim T in Honduras to Proveedor #27 in the United States for $1,100.

172.    On or about July 2, 2024, **JULIAN GIRALDO-OSPINA** shared with **ANDRES GIRALDO-OSPINA** a message from Proveedor #27 confirming receiving the transaction and a statement from **JULIAN GIRALDO-OSPINA** that he anticipated additional transactions the next day.

173.    On or about July 3, 2024, **JULIAN GIRALDO-OSPINA** messaged **ANDRES GIRALDO-OSPINA** that he would be picking up the money that day and sent an image of mathematical calculations showing how the funds would be distributed, including what **ANDRES GIRALDO-OSPINA**'s share would be.

174.    On or about July 27, 2024, Proveedor #27 in the United States received a second payment from Victim T in Honduras, this time a $1,500 wire transfer.

175.    From on or about June 27, 2024, to on or about November 7, 2024, **ANDRES GIRALDO-OSPINA** electronically saved:  a) a screenshot in which a partially visible male is seen in front of an American flag, holding what appears to be an United States Employment Authorization Card in the name of Victim T, and below it, the message announcing to Victim T that his work permission had been approved; and b) a document with Victim T's name, date of birth, and a photograph, which stated that it was confirming the delivery/shipping of Victim T's visa application.

176.    From on or before July 1, 2024, to on or about August 7, 2024, a Visa-Fraud Enterprise member caused a forged bank statement in the name of Victim T with a purported account number to be added to the counterfeit Wells Fargo Bank website at https://www.wellssfargoworldd.com.

177.    From on or about July 1, 2024, to on or about October 31, 2024, a Visa-Fraud Enterprise member or associate caused the name of Victim T to be added to the website at giopostalservice.com.

178.    On or about July 29, 2024, a Visa-Fraud Enterprise member or associate messaged the name of Victim T to **ANDRES GIRALDO-OSPINA** in a chat followed within seconds by a message later deleted.

179.    On or about August 10, 2024, **JULIAN GIRALDO-OSPINA** sent **ANDRES GIRALDO-OSPINA** a video showing piles of cash associated with five transactions, one with a receipt showing the sent amount as $550, and the others with notes stapled to piles of cash.

180.   On or about August 28, 2024, **ESTEBAN ROBLEDO-CORREA** messaged the Secretarias group asking who was using three phone numbers that were about to expire and needed to be renewed.

181.   On or about September 11, 2024, **ESTEBAN ROBLEDO-CORREA** messaged the Secretarias group asking who was using five phone numbers that were about to expire and needed to be renewed.

182.   On or about September 12, 2024, a secretaria for one of **ANDRES GIRALDO-OSPINA**'s groups messaged a group chat within the Visa-Fraud Enterprise, to remind people to pay the staff for their work—300,000 pesos for each approval, 100,000 pesos for each video call; and 50,000 for each phone call—because they were all there to make money.

183.   On or about September 13, 2024, **ESTEBAN ROBLEDO-CORREA** messaged the Secretarias group about two phone numbers he had renewed and reminded the secretarias whose numbers they were to pay him the 80 thousand [pesos] cost for each recharged number.

184.   On or about September 16, 2024, **ESTEBAN ROBLEDO-CORREA** messaged the Secretarias group asking who was using three phone numbers that were about to expire and needed to be renewed.

185.   On September 19, 2024, **JULIAN GIRALDO-OSPINA** sent a screenshot to **ANDRES GIRALDO-OSPINA** of a message exchange in which **JULIAN GIRALDO-OSPINA** and **EDWIN ALBERTO CORREA-DAVID** agreed that **JULIAN GIRALDO-OSPINA** would move out by the 25th of the month and would pay **EDWIN ALBERTO CORREA-DAVID** the pro-rated rent due to the landlord for the time they were there.

186.    On or about September 21, 2024, **ANDRES GIRALDO-OSPINA** sent **JULIAN GIRALDO-OSPINA** a copy of a lease agreement for Carrera 78 # 89 104, INT 301, Medellin.

187.    On or about September 22, 2024, **ANDRES GIRALDO-OSPINA** messaged **JULIAN GIRALDO-OSPINA** photographs of people packing up an office.

188.    On or about September 25, 2024, **ANDRES GIRALDO-OSPINA** messaged **JULIAN GIRALDO-OSPINA** photographs of what appeared to be a newly constructed office, to which **JULIAN GIRALDO-OSPINA** replied, it is better than the last location.

189.    On or about November 20, 2024, a member of the Visa-Fraud Enterprise responded to an inquiry from Undercover #1 (UC-#1), a Salvadoran police officer acting in an undercover capacity, that had been made on a Facebook page entitled Visa Solutions Assist. The Visa-Fraud Enterprise member requested UC-#1's name, phone number, and country of residence.

190.    On or about November 27, 2024, a member of the Visa-Fraud Enterprise who identified himself as "Lic William Smith Miller," a lawyer responding to the UC's inquiry, contacted UC-#1 and sent him forms to fill out in connection with his application for an H-2B visa.

191.    On or about December 23, 2024, and on or about December 27, 2024, Proveedor #28 sent $700 and $1,400, respectively, by Ria, from New York to Colombia to Proveedor #29, a Visa-Fraud Enterprise a proveedore used by **VIVIANA URREGO-ROJAS**.

192.    On December 28, 2024, **VIVIANA URREGO-ROJAS** instructed Proveedor #3 in Colombia to transfer a sum of Colombian pesos he had received in his Bancolombia account to the bank account of Proveedor #30, which she provided and said that she had to pay the "codigo" today in that she owed it to "Edwin" for days.

193. On or about January 15, 2025, a member of the Visa-Fraud Enterprise identifying himself as a United States consular official in New York, called UC-#1, told UC-#1 that he was responding to UC-#1's inquiry on the Visa Solutions web page, and told UC-#1 that he had been approved for an H-2B visa for a period of 18 months and had been assigned a tracking number and a USIS case number.

194. On or about January 16, 2025, a member of the Visa-Fraud Enterprise messaged to UC-#1 and displayed an internet link to https://us-confirmation.com, so that UC-#1 could confirm that his visa had been approved.

195. On or about January 17, 2025, Proveedor #31 received in Minneapolis, Minnesota, a Western Union transmission of $250 sent from El Salvador by UC-#1 at the request of a Visa-Fraud Enterprise member.

196. On or about January 24, 2025, Proveedor #33 received in Minneapolis, Minnesota, a Western Union transmission of $250 sent from El Salvador by UC-#1 at the request of a Visa-Fraud Enterprise member.

197. On or about January 28, 2025, Proveedor #3 in Colombia received a transmission of 2,228,275 pesos, and **VIVIANA URREGO-ROJAS** messaged him that he should transfer 1,983,000 to Proveedore #30 and 145,000 to **VIVIANA URREGO-ROJAS**.

198. On or about January 28, 2025, a Visa-Fraud Enterprise member purporting to be calling from the United States Embassy gave UC-#1, information on Proveedor #32 and told UC-#1 to send Proveedor #32 in the United States $500 for the required deposit for his application process.

199.    On or about January 29, 2025, Proveedor #32 received in the United States, a Western Union transmission of $500 sent from El Salvador by UC-#1, at the direction of a member of the Visa-Fraud Enterprise.

200.    On or about February 3, 2025, Proveedor #28 received in the United States from El Salvador $500 sent by UC-#1 at the direction of a member of the Visa-Fraud Enterprise.

201.    On February 4, 2025, **VIVIANA URREGO-ROJAS** messaged Proveedor #1 that since Friday, they took down the pages of these people, and now nine offices have no work and that if there are no pages, she has no money.

202.    On or about February 6, 2025, a Visa-Fraud Enterprise associate, Proveedor #33, received in Minneapolis, Minnesota, a Western Union transmission of $500 sent from El Salvador by UC-#1 at the direction of a member of the Visa-Fraud Enterprise.

203.    On or about February 27, 2025, a Visa-Fraud Enterprise associate, Proveedor #33, received in Minneapolis, Minnesota, a Western Union transmission of $250 sent from El Salvador, by UC-#1, at the direction of a member of the Visa-Fraud Enterprise.

All in violation of Title 18, United States Code, Section 1962(d).

### COUNT 2
### Money Laundering Conspiracy
### (18 U.S.C. § 1956(h))

1.    Paragraphs 1 through 28 of Count 1 are re-alleged and incorporated by reference as though fully set forth herein.

2.    From in or around December 2021, and continuing through on or about the date of this Indictment, in the Southern District of Florida, and elsewhere, the defendants,

**EDWIN ALBERTO CORREA-DAVID,**
**ANDRES GIRALDO-OSPINA,**

46

**a/k/a "FLACO," a/k/a "EL FLACO,"  a/k/a "AGIO," a/k/a "A-GIO,"
JULIAN GIRALDO-OSPINA, a/k/a "JULIO,"
DANNA PAMELA PORRAS-MARIN,
VIVIANA URREGO-ROJAS, a/k/a "VIVI," and
ESTEBAN ROBLEDO-CORREA,**

did knowingly and voluntarily combine, conspire, confederate, and agree with each other and with

other persons known and unknown to the Grand Jury, to commit money laundering offenses, in

violation of Title 18, United States Code, Section 1956, that is:

A.      to knowingly conduct financial transactions affecting interstate and foreign

commerce, which involved the proceeds of a specified unlawful activity, with the intent to promote

the carrying on of said specified unlawful activity, and knowing that the property involved in the

financial transactions represented the proceeds of some form of unlawful activity, in violation of

Title 18, United States Code, Section 1956(a)(l)(A)(i);

B.      to knowingly conduct financial transactions affecting interstate and foreign

commerce, which transactions involved the proceeds of a specified unlawful activity, knowing that

the property involved in the financial transactions represented the proceeds of some form of

unlawful activity, and knowing that the transactions were designed in whole and in part to conceal

and disguise the nature, location, source, ownership, and control of the proceeds of specified

unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(l)(B)(i);

C.      to knowingly conduct financial transactions affecting interstate commerce, which

transactions involved the proceeds of specified unlawful activity, and knowing that the property

involved in the financial transactions represented the proceeds of some form of unlawful activity,

in order to avoid a transaction reporting requirement under state or federal law, in violation of Title

18, United States Code, Section 1956(a)(1)(B)(ii); and

D.      to knowingly transmit and transfer a monetary instrument and funds from a place in the United States to or through a place outside the United States and to a place in the United States from or through a place outside the United States, with the intent to promote the carrying on of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(2)(A).

3.      It is further alleged that the specified unlawful activity is wire fraud, in violation of Title 18, United States Code, Section 1343.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT 3
### Conspiracy
### (18 U.S.C. § 371)

1.      Paragraphs 2 through 5 and 7 of Count 1 are re-alleged and incorporated by reference as though fully set forth herein.

2.      From in or around December 2021, and continuing through the date of this Indictment, in the Southern District of Florida, and elsewhere, the defendants,

**EDWIN ALBERTO CORREA DAVID,
ANDRES GIRALDO OSPINA,
a/k/a "FLACO," a/k/a "EL FLACO," a/k/a "AGIO," a/k/a "A GIO,"
JULIAN GIRALDO OSPINA, a/k/a "JULIO,"
DANNA PAMELA PORRAS MARIN, and
ESTEBAN ROBLEDO CORREA**

did knowingly and willfully conspire and agree with each other and with others known and unknown to the Grand Jury, to commit offenses against the United States, that is:

A.      to falsely make, forge, counterfeit, and alter the seal of any department and agency of the United States, and facsimiles thereof, in violation of Title 18 United States Code, Section 506;

B.      to fraudulently and wrongfully affix the seal of any department and agency of the United States, to and upon any certificate, instrument, commission, document, and paper, in violation of Title 18, United States Code, Section 1017; and

C.      to falsely assume and pretend to be an officer and employee acting under the authority of the United States and any department, agency and officer thereof, and acts as such, and in such pretended character demands and obtains any money, paper, document, and thing of value, in violation of Title 18, United States Code Section 912.

### The Purpose of the Conspiracy

3.      Paragraph 6 of Count 1 of this Indictment is re-alleged and incorporated by reference as though fully set forth herein

### Manner and Means of the Conspiracy

4.      Paragraphs 8 through 28 of Count 1 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

### Overt Acts

5.      Overt Acts 1 to 203 of Count 1 are re-alleged and incorporated by reference as though fully set forth herein.

All in violation of Title 18, United States Code, Section 371.

## **FORFEITURE ALLEGATIONS**

### **Racketeering Conspiracy**

1.      The allegations of this Indictment are hereby re-alleged and by this reference fully

incorporated herein for the purpose of alleging forfeiture to the United States of America of certain

property in which the defendants,

**EDWIN ALBERTO CORREA DAVID**
**DANNA PAMELA PORRAS MARIN**
**ANDRES GIRALDO OSPINA,**
**a/k/a "FLACO," a/k/a "EL FLACO," a/k/a "AGIO,"**
**JULIAN GIRALDO OSPINA, a/k/a "JULIO,"**
**VIVIANA URREGO ROJAS, a/k/a "VIVI," and**
**ESTEBAN ROBLEDO CORREA,**

have an interest.

2.      Upon conviction of a violation of Title 18, United States Code, Section 1962(d), as

alleged in this Indictment, the defendants shall forfeit to the United States, pursuant to Title 18,

United States Code, Section 1963(a)(1)-(3):

      i.      any interest the person has acquired and maintained in violation of Title 18, United States Code, Section 1962;

      ii.     any interest in, security of, claims against, or property and contractual rights of any kind affording a source of influence over, any enterprise which the person has established, operated, controlled, conducted, and participated in the conduct of, in violation of Title 18, United States Code, Section 1962; or

      iii.    any property constituting and derived from any proceeds which the defendant(s) obtained, directly and indirectly, from racketeering activity or unlawful debt collection, in violation of Title 18, United States Code, Section 1962.

3.      If any of the property subject to forfeiture as a result of any act or omission by the

defendant(s):

      a.      cannot be located upon the exercise of due diligence;

      b.      has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be subdivided without difficulty;

the United States shall be entitled to forfeiture of substitute property under the provisions of Title

18 United States Code, Section 1963(m).

**Money Laundering Conspiracy**

4.      Upon conviction of a violation of Title 18, United States Code, Section 1956, as

alleged in this Indictment, the defendant(s) shall forfeit to the United States any property, real or

personal, involved in such offense, and any property traceable to such property, pursuant to Title

18, United States Code, Section 982(a)(1).

5.      If any of the property subject to forfeiture, as a result of any act or omission of the

defendants:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property under the provisions of Title

21, United States Code, Section 853(p).

All pursuant to Title 18, United States Code, Section 1963, Title 18, United States Code, Section 982(a)(1)(A), and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, Section 982(b)(1).

**A TRUE BILL**

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

DAVID L. JAFFE
CHIEF
VIOLENT CRIME AND RACKETEERING SECTION
U.S. DEPARTMENT OF JUSTICE

AMY L. SCHWARTZ
GRACE BOWEN
TRIAL ATTORNEYS
VIOLENT CRIME AND RACKETEERING SECTION
UNITED STATES DEPARTMENT OF JUSTICE

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**UNITED STATES OF AMERICA**

**CASE NO.:** _____

v.

**CERTIFICATE OF TRIAL ATTORNEY**

EDWIN ALBERTO CORREA-DAVID, et al.,

_____ /
Defendants.

**Superseding Case Information:**
New Defendant(s) (Yes or No) _____
Number of New Defendants _____
Total number of new counts _____

**Court Division** (select one)

☑ Miami  ☐ Key West  ☐ FTP
☐ FTL  ☐ WPB

I do hereby certify that:

1. I have carefully considered the allegations of the Indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, 28 U.S.C. §3161.

3. Interpreter: (Yes or No) Yes
   List language and/or dialect: Spanish _____

4. This case will take __15__ days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)
   I    ☐  0 to  5 days
   II   ☐  6 to 10 days
   III  ☑  11 to 20 days
   IV   ☐  21 to 60 days
   V    ☐  61 days and over

   (Check only one)
   ☐ Petty
   ☐ Minor
   ☐ Misdemeanor
   ☑ Felony

6. Has this case been previously filed in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____

7. Has a complaint been filed in this matter? (Yes or No) No
   If yes, Judge _____ Magistrate Case No. _____

8. Does this case relate to a previously filed matter in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____

9. Defendant(s) in federal custody as of _____

10. Defendant(s) in state custody as of _____

11. Rule 20 from the _____ District of _____

12. Is this a potential death penalty case? (Yes or No) No

13. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)? (Yes or No) No

14. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No

15. Did this matter involve the participation of or consultation with Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? No

16. Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024? No

By: _____
AMY SCHWARTZ
DOJ Trial Attorney
SDFL Court ID No.  A5503221

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name**:   **EDWIN ALBERTO CORREA-DAVID**

**Case No**:

Count #:   1

Title 18, United States Code, Section 1962(d)

Racketeering Conspiracy
* **Max. Term of Imprisonment:   20 years**
* **Mandatory Min. Term of Imprisonment (if applicable):   N/A**
* **Max. Supervised Release:   3 years**
* **Max. Fine:   $250,000 or twice the gross gain or loss from the offense**

Count #:   2

Title 18, United States Code, Section 1956(h)

Conspiracy to Commit Money Laundering
* **Max. Term of Imprisonment:   20 years**
* **Mandatory Min. Term of Imprisonment (if applicable):   N/A**
* **Max. Supervised Release:   3 years**
* **Max. Fine:   $500,000 or twice the value of the property involved in the transaction**

Count #:   3

Title 18, United States Code, Section 371

Conspiracy
* **Max. Term of Imprisonment:   5 years**
* **Mandatory Min. Term of Imprisonment (if applicable):   N/A**
* **Max. Supervised Release:   3 years**
* **Max. Fine:   $250,000 or twice the gross gain or loss from the offense**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name**:    **DANNA PAMALA PORRAS-MARIN**

**Case No**:

**Count #:**   1

Title 18, United States Code, Section 1962(d)

Racketeering Conspiracy
* **Max. Term of Imprisonment:    20 years**
* **Mandatory Min. Term of Imprisonment (if applicable):   N/A**
* **Max. Supervised Release:   3 years**
* **Max. Fine:    $250,000 or twice the gross gain or loss from the offense**

**Count #:**   2

Title 18, United States Code, Section 1956(h)

Conspiracy to Commit Money Laundering
* **Max. Term of Imprisonment:    20 years**
* **Mandatory Min. Term of Imprisonment (if applicable):    N/A**
* **Max. Supervised Release:    3 years**
* **Max. Fine:    $500,000 or twice the value of the property involved in the transaction**

**Count #:**   3

Title 18, United States Code, Section 371

Conspiracy
* **Max. Term of Imprisonment:  5 years**
* **Mandatory Min. Term of Imprisonment (if applicable):    N/A**
* **Max. Supervised Release:    3 years**
* **Max. Fine:    $250,000 or twice the gross gain or loss from the offense**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include
restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**:      **ANDRES GIRALDO-OSPINA**
**a/k/a "Flaco," a/k/a "El Flaco," a/k/a "Agio," a/k/a "A-Gio"**

**Case No**:

Count #:    1

   Title 18, United States Code, Section 1962(d)

   Racketeering Conspiracy
**\* Max. Term of Imprisonment:    20 years**
**\* Mandatory Min. Term of Imprisonment (if applicable):   N/A**
**\* Max. Supervised Release:  3 years**
**\* Max. Fine:    $250,000 or twice the gross gain or loss from the offense**

Count #:    2

   Title 18, United States Code, Section 1956(h)

   Conspiracy to Commit Money Laundering
**\* Max. Term of Imprisonment:    20 years**
**\* Mandatory Min. Term of Imprisonment (if applicable):    N/A**
**\* Max. Supervised Release:    3 years**
**\* Max. Fine:    $500,000 or twice the value of the property involved in the transaction**

Count #:    3

   Title 18, United States Code, Section 371

   Conspiracy
**\* Max. Term of Imprisonment:  5 years**
**\* Mandatory Min. Term of Imprisonment (if applicable):    N/A**
**\* Max. Supervised Release:    3 years**
**\* Max. Fine:    $250,000 or twice the gross gain or loss from the offense**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**:   **JULIAN GIRALDO-OSPINA, a/k/a "Julio"**

**Case No**:

Count #:   1

Title 18, United States Code, Section 1962(d)

Racketeering Conspiracy
* **Max. Term of Imprisonment:   20 years**
* **Mandatory Min. Term of Imprisonment (if applicable):   N/A**
* **Max. Supervised Release:   3 years**
* **Max. Fine:   $250,000 or twice the gross gain or loss from the offense**

Count #:   2

Title 18, United States Code, Section 1956(h)

Conspiracy to Commit Money Laundering
* **Max. Term of Imprisonment:   20 years**
* **Mandatory Min. Term of Imprisonment (if applicable):    N/A**
* **Max. Supervised Release:   3 years**
* **Max. Fine:    $500,000 or twice the value of the property involved in the transaction**

Count #:   3

Title 18, United States Code, Section 371

Conspiracy
* **Max. Term of Imprisonment:   5 years**
* **Mandatory Min. Term of Imprisonment (if applicable):    N/A**
* **Max. Supervised Release:   3 years**
* **Max. Fine:    $250,000 or twice the gross gain or loss from the offense**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**:  **VIVIAN URREGO-ROJAS, a/k/a "Vivi"**

**Case No**:

Count #:   1

Title 18, United States Code, Section 1962(d)

Racketeering Conspiracy
* **Max. Term of Imprisonment:   20 years**
* **Mandatory Min. Term of Imprisonment (if applicable):   N/A**
* **Max. Supervised Release:   3 years**
* **Max. Fine:     $250,000 or twice the gross gain or loss from the offense**

Count #:   2

Title 18, United States Code, Section 1956(h)

Conspiracy to Commit Money Laundering
* **Max. Term of Imprisonment:   20 years**
* **Mandatory Min. Term of Imprisonment (if applicable):    N/A**
* **Max. Supervised Release:   3 years**
* **Max. Fine:     $500,000 or twice the value of the property involved in the transaction**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**: \_\_\_\_**ESTEBAN ROBLEDO-CORREA**_____

**Case No**: _____

Count #:   1

\_\_Title 18, United States Code, Section 1962(d)_____

\_\_Racketeering Conspiracy_____
* **Max. Term of Imprisonment:**   **20 years**
* **Mandatory Min. Term of Imprisonment (if applicable):**   **N/A**
* **Max. Supervised Release:**   **3 years**
* **Max. Fine:**   **$250,000 or twice the gross gain or loss from the offense**

Count #:   2

\_\_Title 18, United States Code, Section 1956(h)_____

\_\_Conspiracy to Commit Money Laundering_____
* **Max. Term of Imprisonment:**   **20 years**
* **Mandatory Min. Term of Imprisonment (if applicable):**   **N/A**
* **Max. Supervised Release:**   **3 years**
* **Max. Fine:**   **$500,000 or twice the value of the property involved in the transaction**

Count #:   3

\_\_Title 18, United States Code, Section 371_____

\_\_Conspiracy_____
* **Max. Term of Imprisonment:  5 years**
* **Mandatory Min. Term of Imprisonment (if applicable):**   **N/A**
* **Max. Supervised Release:**   **3 years**
* **Max. Fine:**   **$250,000 or twice the gross gain or loss from the offense**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**